PAILET v. YVETTE CO., INC., ET AL.

(April 7, 1930. Opinion and Decree.)
(May 5, 1930. Rehearing Refused.)

Rudolph O. Vorbusch, of New Orleans, attorney for plaintiff, appellant.

Spearing & Mabry and Wm. H. McClendon, of New Orleans, attorneys for defendants, appellees.

HIGGINS, J. Plaintiff sues defendants in solido for damages for personal injuries alleged to have been suffered by her as a result of the defendants' employee unskillfully, incompetently, and negligently cutting the flesh on the third finger of the left hand of plaintiff, while she was having her finger nails manicured at defendants' beauty parlor. The petition also alleges that the instruments used by defendants' employee in manicuring the plaintiff's nails were not properly sterilized, and that they were contaminated by bacteria and germs, causing an infection to the finger at the place where the flesh was cut. Defendants, in their answer, admitted that plaintiff had her nails manicured as alleged, but denied liability, averring that the operator who manicured the plaintiff's finger nails was a skilled and experienced one and that the instruments were in a proper state of sanitation, having been properly sterilized.

There was judgment in favor of the defendants dismissing the suit, and plaintiff has appealed.

The record shows that the plaintiff visited the beauty parlor of the defendants on July 14, 1927, and had her finger nails manicured. She had a paronychia, commonly known as a hang nail, on the third finger of the left hand, and the operator clipped it close to the flesh in order that there would not be any protruding part which might catch on anything so that it might heal up. A drop of blood was drawn in removing the hang nail and mercurochrome was applied. The evidence also shows that at the time the plaintiff had her finger nails manicured they were in a neglected condition and were not clean and

were stained from black hair dye. This was removed with peroxide. At the time the hang nail was removed she did not complain of any pain or give any outcry. A week later she returned to the defendants' place of business and complained of an infected finger. The manager brought her to Dr. Bloch, defendants' physician, who removed the part of the finger nail where the infection was and made provision for proper drainage of the affected part.

The plaintiff is a very highly nervous lady, and when the finger did not respond to the treatment of Dr. Bloch as quickly as she desired, she complained and was directed by him to go to Dr. Landry's office in order that he might look at the finger. She did not go to Dr. Landry, but went to her own physician, Dr. Davidson, who treated the finger for some three months. Plaintiff claims that she suffered excruciating pain and that the finger is permanently disfigured.

The only evidence offered by the plaintiff was her testimony and Dr. Davidson's. There is nothing in the plaintiff's testimony which would indicate that the operator was guilty of negligence, carelessness, lack of skill, or incompetency. Dr. Davidson's testimony is limited strictly to the treatment of the infected finger. Plaintiff did not attempt to prove that the instruments used by the operator in manicuring her nails were contaminated with bacteria and germs and were in an unsanitary condition.

The defendants' evidence clearly shows that the operator who manicured the plaintiff's finger nails was a trained, skilled, and experienced manicurist, and that the instruments used were properly sterilized in lysol solution, which is the customary sterilization process used by beauty parlors for that purpose. The defendants' evidence further shows that the plaintiff's hang nail was properly removed in the customary manner, it being necessary to clip the hang nail close to the flesh in order that there would not be any protruding part to catch in anything, causing the hang nail to become deeper. Defendants' evidence further shows that the plaintiff used hair dye and that her finger nails were stained from the dye both on the occasion of her visit the first time and thereafter at the doctor's office.

A careful reading of the record convinces us that the judgment is correct.

For the reasons assigned, it will therefore be affirmed.